IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTY SNIDER AND BRUCE SNIDER, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) )  Case No. CIV-12-1116-F ) |
| UNITED STATES OF AMERICA, ex rel., THE UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction, filed May 28, 2013 (doc. no. 28). Plaintiffs have responded, and defendant has replied.

I.

Plaintiffs commenced this action on October 10, 2012, seeking to recover damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. Defendant sought dismissal of plaintiffs' complaint on March 28, 2013, claiming that the court lacked jurisdiction because plaintiffs' complaint fell within the discretionary function exception to recovery under the FTCA. Plaintiffs, in response to defendant's motion, requested leave to amend their complaint to show that the exception is not available in this case. The court granted plaintiffs' request and plaintiffs filed a First Amended Complaint on May 12, 2013.

In the First Amended Complaint, plaintiffs allege that while they were camping at Fort Supply Lake on or about June 18, 2010, "a dead tree snapped and fell on top of [plaintiff Kristy Snider] her causing severe injury." *Id.,* ¶ 7.  Ms. Snider's injuries

were to her head, shoulders and left arm. She was hospitalized for four days. The wound required twelve staples. She has a permanent scar on her scalp. Both plaintiffs missed work because of these injuries, resulting in lost wages for both of them.

Plaintiffs seek to recover their damages from defendant, as the owner and operator of Fort Supply Lake, under a theory of negligence. Plaintiffs allege that the incident occurred in an area of the park where defendant has individual campsites for patrons to rent. Plaintiffs allege that there are picnic tables, grills, electrical outlets, rest areas and other conveniences generally located in the campsite area. Plaintiffs also allege that the grass is mowed and maintained and there are signs located throughout areas of the park. Plaintiffs allege that the tree which fell on Ms. Snider was approximately 10 feet away from the picnic table located at their campsite. According to plaintiffs, defendant had a duty to maintain its premises and to correct the dangerous condition created by the failure to maintain its premises, to warn plaintiffs of the dangerous condition or to otherwise exercise due care. Prior to filing suit, plaintiffs filed claims with defendant under the FTCA for compensation for their injuries. All claims were denied.

In its motion, defendant seeks to dismiss plaintiffs' complaint under Rule 12(b)(1), Fed. R. Civ. P., arguing that the facts alleged in the First Amended Complaint do not overcome the discretionary function exception to liability under the FTCA. *See*, 28 U.S.C. § 2680(a). If the discretionary function exception applies, defendant retains its sovereign immunity and the court lacks subject matter jurisdiction over this action. Defendant specifically argues that the complained-of conduct satisfies the two-part test set forth in <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988). First, defendant asserts that no federal statute, regulation or policy imposed an obligation upon it to respond to the threat of hazardous trees differently than it did. Defendant contends that its conduct in maintaining its campsites and its decision as

to whether or not to warn patrons of any hazards were discretionary. Second, defendant maintains that its conduct in maintaining its campsites and its decision as to whether to warn were based on considerations of public policy. Defendant argues that numerous cases have determined that conduct similar to that complained of in this case falls within the ambit of the discretionary function exception.

Plaintiffs, in response, agree that the two-part test announced in <u>Berkovitz v. United States</u> applies in determining whether complained-of conduct falls within the discretionary function exception. As to defendant's first contention, plaintiffs concede that there is no federal statute, regulation or policy that prescribes a course of conduct for employees to follow as to the maintenance of trees or to warn about their associated hazards. However, plaintiffs contend that application of the second part of the <u>Berkovitz</u> test is fatal to defendant's reliance on the discretionary function exception. The decisions in question, plaintiffs argue, are not ones requiring the exercise of judgment based upon considerations of public policy. Plaintiffs argue that only decisions "susceptible to policy analysis" are protected by the exception. <u>United States v. Gaubert</u>, 499 U.S. 315, 325 (1991). Plaintiffs acknowledge that the Supreme Court in <u>Gaubert</u> created a presumption that a discretionary act authorized by regulation involves the same policies which led to the promulgation of the regulation. Nonetheless, plaintiffs, citing two Tenth Circuit cases, <u>Duke v. Department of Agriculture</u>, 131 F.3d 1407 (10th Cir. 1997) and <u>Boyd v. United States</u>, 881 F.2d 895 (10th Cir. 1989), which involved failure to warn allegations, contend that the facts of a specific case may overcome the presumption. Plaintiffs contend that each act or omission must be separately analyzed and must implicate a political, social or economic decision. According to plaintiffs, another patron brought the dead tree to the attention of defendant prior to the incident involving Ms. Snider. Plaintiffs contend that with prior knowledge of the condition of the tree, "the government would

3

not have had to give much consideration as to which diseased tree to eliminate and/or warn the public about." Doc. no. 29 at 9. Further, plaintiffs contend that the campsite at which they were camping was not in a natural, pristine, wilderness setting. According to plaintiffs, defendant has undertaken to maintain the vegetation in the area by trimming trees and mowing grass. There are numerous signs, plaintiffs assert, to indicate locations and costs for recreation activities. Plaintiffs contend that these facts, along with the fact that defendant had knowledge of the condition of the tree, are sufficient to overcome the discretionary function exception.

Defendant, in reply, contends that there is no allegation in the original complaint or the First Amended Complaint that another patron of the park brought the dead tree to the attention of defendant prior to the incident involving Ms. Snider. Defendant states that it knows of no evidence of another patron bringing the dead tree to its attention. In any event, defendant contends that plaintiffs have failed to specify what defendant could have done that it failed to do to protect Ms. Snider. Defendant also asserts that while the park was not in a state of pristine wilderness, "it does not follow that the Corps may not take aesthetic considerations into account in making these determinations" [as to the safety of visitors and government employees, the available manpower, and the availability of budgetary resources]. Doc. no. 30, at 4. Defendant contends that the tree in question was beyond the mowing boundary of the campsite (and thus would have been in a more natural setting than the campsite itself) and that the decision as to the boundaries and the maintenance program in that regard would be discretionary.[1] Further, defendant contends that a decision about the

---

[1] The record is not altogether clear, at least for purposes of review under Rule 12(b)(1) on the basis of the face of the complaint, as to whether the dead tree was beyond the mowing boundary of the campsite. Plaintiffs allege that: "merely establishing that the boundaries of campsite maintenance are discretionary is not sufficient to establish that the alleged action taken, or not taken, by Defendant falls within the purview of the discretionary function exception." First Amended Complaint, doc. no. 25, at ECF p. 2. This suggests that plaintiffs may acquiesce in defendant's

placement of signs would have to be made pursuant to an overall policy governing the agency's stewardship of public lands. Defendant contends that the policymakers have chosen not to place warnings signs of general hazards at campsites and this is squarely within the scope of the discretionary function exception. Finally, defendant contends that the pressure of tight budgets for agencies across the federal government is an ever-present concern for agencies and decisions about how to allocate a finite amount of resources in such a way as to best fulfill the agency's mission and serve the public would be invested with public policy considerations, thereby satisfying the second part of the Berkovitz test.

II.

The FTCA waives sovereign immunity for actions against the United States resulting from personal injuries caused by the negligent acts of governmental employees while acting in the scope of their employment. Garcia v. United States Air Force, 533 F.3d 1170, 1175 (10th Cir. 2008). Excluded from this waiver of immunity, however, are claims based upon the performance of a "discretionary function or duty on the part of a federal agency or an employee of the Government." Id. If the discretionary function exception applies to the complained-of conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the action. Id. at 1076.

To determine whether the discretionary function exception applies to the complained-of conduct, the court, as the parties agree, must employ the two-part test

---

assertion that the dead tree was beyond the mowing boundary of the campsite. But, the most that the First Amended Complaint actually has to say about that, as a factual matter, is that "the tree which fell on Ms. Kristy Snider was approximately 10 feet away from the picnic table located at their campsite." Id. at ECF p. 4. Accordingly, although the court notes defendant's statement that the dead tree was beyond the mowing boundary of the campsite, the court does not, for purposes of the present motion, assume that statement to be true.

set forth in Berkovitz v. United States. The Tenth Circuit has summarized the test as follows:

> The first step of the *Berkovitz* test requires this court to determine whether the challenged conduct "involves an element of judgment or choice," in which case it is discretionary and falls within the language of the exception, or whether it involves, "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," in which case the exception does not apply. Berkovitz, 486 U.S. at 536 . . .
>
> If the conduct involves discretionary judgment under the first step of *Berkovitz*, then we must apply the second step, which requires this court to "determine whether that judgment is the kind that the discretionary function exception was designed to shield." *Id*. The exception protects only those discretionary actions or decisions which are "based on considerations of public policy." *Id*. at 537 . . .The purpose is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 536-537.

Elder v. United States, 312 F.3d 1172, 1176 (10th Cir. 2002) (quoting Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993)). If both the first and second prerequisites articulated in Berkovitz are met, the discretionary function exception to the waiver of sovereign immunity applies. Therefore, the discretionary function exception is not an impediment if plaintiffs can establish that at least one of the two prerequisites to its applicability is not satisfied. Garcia v. United States Air Force, 533 F.3d 1170, 1176 (10th Cir. 2008); *see also*, Sydnes v. United States, 523 F.3d 1179, 1183 (10th Cir. 2008).

As stated above, plaintiffs concede that the first part of the test is satisfied in that the complained-of conduct is a discretionary choice for the acting government

employee. They acknowledge that there is no federal statute, regulation or policy which prescribes a course of conduct for a government employee to follow as to the maintenance of its premises regarding dead trees or to warn about the hazards presented by the dead trees. Indeed, the relevant regulation relating to maintenance of Army Corps of Engineers recreation projects goes no further than to state that:

> It is the policy of the Secretary of the Army, acting through the Chief of Engineers, to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities while protecting and enhancing these resources.

36 C.F.R. § 327.1(a). *See*, Navarette v. United States, 500 F.3d 914, 916 (9th Cir. 2007) (general admonitions to make the campsite safe are not specific enough to make governmental decisions nondiscretionary).

Although conceding that the first part of the test is satisfied, plaintiffs contend that the second part of the test is not satisfied. The Supreme Court clarified the second prong of the Berkovitz test in Gaubert. *See*, Lopez v. United States, 376 F.3d 1055, 1057 (10th Cir. 2004). When making the second inquiry, the court is not to consider the subjective intent of the particular actor or whether he or she was animated by a concern for public policy. *Id.* (citing Gaubert, 499 U.S. at 325). Rather, the court must consider whether the actions taken, by their nature, implicate public policy concerns, or are "susceptible to policy analysis." *Id.* The court need not find that a government employee made a conscious decision regarding policy considerations in order to satisfy the second prong of the Berkovitz test. *Id.* "The pertinent inquiry is whether the decision 'implicates the exercise of a policy judgment of a social, economic, or political nature.'" Harrell v. United States, 443 F.3d 1231, 1236 (10th Cir. 2006) (quoting Elder, 312 F.3d at 1181).

Initially, the court notes, as pointed out by defendants, that the First Amended Complaint does not contain allegations about defendant having been informed by another patron about the dead tree which fell on plaintiff, Kristy Snider. Nor have plaintiffs presented any supporting evidence with their response. They have only mentioned this factual allegation in their briefing. However, under LCvR 7.1(j), factual statements appearing only in briefs are not deemed to be part of the record. Plaintiffs make an allegation in the First Amended Complaint as to defendant's "prior knowledge of a hazardous tree," *see*, ¶ 2, but that allegation is conclusory and disregarded because the complaint provides no facts to support that assertion. The court therefore finds that the First Amended Complaint does not support a finding that defendant had prior knowledge of the dead tree which injured Kristy Snider.

The court concludes that the conduct complained of by plaintiffs – failing to maintain the park premises by removing dead trees – is the sort of conduct of which the discretionary function exception was designed to shield. Gaubert, 499 U.S. at 322-23. In the court's view, decisions involving tree removal can quite clearly be policy-driven matters. On government property (or any other property) that is wooded, there will inevitably be dead trees. Dead tree removal, if it is to occur at all, must get in line for government resources[2] along with all of the other demands on the operator of a campground. Hatcher v. United States, 2013 WL 275894, *3 (6th Cir. Jan. 24, 2013) (inspecting and removing hazardous trees in a wooded area surrounding a picnic area where plaintiff and his family were visiting fall within discretionary function exception because "tree inspection and removal is the sort of conduct inherently subject to important and unpredictable constraints like limited funds and manpower"); Autery v. United States, 992 F.2d 1523, 1531 (11th Cir. 1993) (decisions

---

[2] It can fairly be noted, although not established by the pleadings, that tree removal is neither particularly cheap nor particularly free of hazards to those who do it.

8

on method of inspecting hazardous trees and in implementing its unwritten tree inspection plan required the National Park Service to weigh risk of harm, the need for other safety programs, the extent to which the natural state of the forest should be preserved and the limited financial and human resources available and thus fell within the discretionary function exception); *but cf.* Fernandez v. United States, 2012 WL 3877624 (9th Cir. Sept. 7, 2012) (removal of a previously identified dangerous tree was "merely the implementation of a decision regarding routine maintenance and/or safety, which generally do not involve a policy weighing decision.") The court therefore concludes that the discretionary function exception applies to plaintiffs' claim with respect to failure to maintain the defendant's premises by removing dead trees.

As to the failure to warn claim, the court likewise finds that the conduct complained of falls within the discretionary function exception. In Gaubert, the Supreme Court stated:

> [I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.
>
> \* \* \* \*
>
> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

Gaubert, 499 U.S. at 324. Accordingly, it is presumed that defendant's decision (or, as plaintiffs alternatively call it, "nondecision," doc. no. 29, at 7, echoing Duke v.

on method of inspecting hazardous trees and in implementing its unwritten tree inspection plan required the National Park Service to weigh risk of harm, the need for other safety programs, the extent to which the natural state of the forest should be preserved and the limited financial and human resources available and thus fell within the discretionary function exception); *but cf*. Fernandez v. United States, 2012 WL 3877624 (9th Cir. Sept. 7, 2012) (removal of a previously identified dangerous tree was "merely the implementation of a decision regarding routine maintenance and/or safety, which generally do not involve a policy weighing decision.") The court therefore concludes that the discretionary function exception applies to plaintiffs' claim with respect to failure to maintain the defendant's premises by removing dead trees.

As to the failure to warn claim, the court likewise finds that the conduct complained of falls within the discretionary function exception. In Gaubert, the Supreme Court stated:

> [I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.
>
> \* \* \* \*
>
> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

Gaubert, 499 U.S. at 324. Accordingly, it is presumed that defendant's decision (or, as plaintiffs alternatively call it, "nondecision," doc. no. 29, at 7, echoing Duke v.

United States, 131 F.3d 1407, 1411 (10th Cir. 1997)) regarding the failure to warn was grounded in policy in light of § 327.1.  Although plaintiffs are correct that the facts of a specific case may overcome the presumption, *see*, Elder, 312 F.3d at 1182, the court concludes that plaintiffs have not alleged sufficient facts to overcome the presumption.  Regardless of whether the dead tree was within the confines of the campsite, it remains true that the campsite was, in essence, a patch of land existing at the margin between lands dominated by man and lands dominated by nature.  Neither the improved nor the unimproved land was free of hazards, some natural and some man made.  Where multiple hazards are present, decisions must be made as to whether, to what extent, and how to warn of those hazards.  Those policy decisions would logically be driven, in part, by considerations such as the seriousness of the hazard, the obviousness of the hazard, the cost of communicating the warning, the practical effectiveness of a warning if attempted, the need to avoid warning proliferation, and (relatedly) the compatibility of warnings (if sought to be communicated intrusively, as with signs) with the natural surroundings.  The court consequently concludes that the decision as to whether to give the warning plaintiffs complain they did not get was both discretionary (Berkovitz step one – plaintiffs have pointed to no specific statute, regulation or policy mandating a warning) and policy driven (Berkovitz step two).

Many of the same interests are at stake here as are found in the cases recognizing the discretionary function exception as a defense to claims arising out of dangers in the wilderness.  Elder, 312 F.3d at 1183; Kiehn v. United States, 984 F.2d 1100, 1105 ("The decision not to post warning signs in remote areas of a national monument inherently requires a balancing of public policy objectives such as resource allocation, visitor safety and scenic preservation."); Johnson v. United States Dep't of Interior, 949 F.2d 332, 337 (10th Cir. 1991) (decisions regarding regulation of

mountain climbing in Grand Tetons "[b]y their very nature, . . . involve balancing competing policy considerations pertaining to visitor safety, resource availability, and the appropriate degree of governmental interference in recreational activity"); Zumwalt v. United States, 928 F.2d 951, 955 (10th Cir. 1991).

In support of their position, plaintiffs primarily rely upon Duke v. Dep't of Agriculture, 131 F.3d 1407 (10th Cir. 1997), wherein the Tenth Circuit held that the discretionary function exception did not apply to the government's decision not to warn of falling rocks at a campground in the Gila National Forest. *Id*. at 1412. In that case, the government conceded that no economic factors influenced the decision or nondecision. *Id*. And the court, as stated by the Court in Elder, 312 F.3d at 1182, could not discern a "public policy (such as preserving natural beauty) that was implicated by the decision not to install a warning sign at the campground, which was located on the side of a road that also served as a parking lot."

In determining whether plaintiffs' reliance on Duke is misplaced, the court bears in mind, first, that if the action or inaction complained of *could have been* the product of a policy-based decision making process, then it matters not whether it was, in fact, the product of such a process. Duke, 131 F.3d at 1411, citing Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997) (absence of a "decision in fact" is not determinative). Second, in deciding whether the action or inaction complained of (here, failure to warn about the dead tree) could have been the product of a policy-based decision making process, it is plainly apparent from the court's reasoning in Duke that the court should determine whether there were (or would have been, if a conscious decision had been made) some real countervailing considerations for the decision maker to take into account. In Duke, and the cases cited by the Duke panel in support of its reasoning, the failure to warn was devoid, or virtually devoid, of any conceivable policy-based rationalization (e.g., failure to warn of the known hazard

presented by boulders rolling from a man-made slope into a roadside area used for camping). *Id.* at 1411-12. There was no "social or political justification," *id.*, mainly because none was articulated or could be imagined.

In the case at bar, the decision as to whether to warn about the dead tree either did (or could have – it does not matter which) turn on meaningful countervailing considerations. Unlike the roadside situation in Duke, esthetics would be an obvious consideration as to whether to put up warning signs to keep people away from dead trees in or near the campground at Fort Supply Lake. Although there are allegations that there were signs at the park to indicate locations and costs of recreation activities, there are no allegations that there were signs warning of natural hazards or that there were any signs at any of the campsites. As stated by the Court in Elder, "[p]hysical barriers undoubtedly spoil the view and the experience of communing with nature." *Id*. at 1183. Moreover, the court concludes that the decision as to which natural hazards to bring to the attention of the public through signs implicates public policy concerns. Faced with limited resources and unlimited natural hazards, defendant must make a public policy determination as to which dangers merit the intrusion of a sign. Too many signs would reduce the impact of individual warnings on the public. Valdez v. U.S., 56 F.3d 1177, 1180 (9th Cir. 1995). Defendant must balance "the goal of public safety against competing fiscal concerns as well as the danger of an overproliferation of warnings." *Id*. The short of the matter is that, in Duke (as was pointed out in Elder, 312 F.3d at 1182), no meaningful policy-based decision making process, based on significant countervailing considerations, was conceivable. The case at bar is not that case. For that reason, plaintiffs' reliance on Duke is misplaced.

Wholly apart from the matters discussed above, the court also notes that, unlike Duke and the cases cited by it, including Boyd, in the case at bar the defendant was not aware of a specific risk of harm. Although defendant may have been aware of the

danger of hazardous trees in a general sense, it was not on notice of the alleged specific hazard.  For this additional reason, The court therefore finds this case distinguishable from <u>Duke</u> and those therein cited.

In sum, the court finds that defendant's decisions or nondecisions in this case are discretionary and susceptible to policy analysis.  Therefore, the court concludes that the decisions or nondecisions fall within the discretionary function exception.  Consequently, the court finds that defendant's sovereign immunity is not waived and that the court lacks subject matter jurisdiction over plaintiff's action.

III.

Based upon the foregoing, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction, filed May 28, 2013 (doc. no. 28), is **GRANTED**.  Plaintiff's action is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1), Fed. R. Civ. P.

DATED July 29, 2013.

_____<br>
STEPHEN P. FRIOT<br>
UNITED STATES DISTRICT JUDGE

12-1116p006 rev .wpd